# IN THE
# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
# ROCK ISLAND DIVISION

| | |
|---|---|
| JENNIFER C.,<br>  Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>  Defendant. | Case No. 4:19-cv-04052-SLD-JEH |

## Report and Recommendation

Now before the Court is the Plaintiff's Motion for Summary Judgment (Doc. 10), the Commissioner's Motion for Summary Affirmance (Doc. 12), and the Plaintiff's Reply (Doc. 13). This matter has been referred for a Report and Recommendation. The Motions are fully briefed, and for the reasons stated herein, the Court recommends the Plaintiff's Motion for Summary Judgment be granted, the Defendant's Motion for Summary Affirmance be denied, and the matter be remanded.[1]

## I

Jennifer C. filed applications for disability insurance benefits (DIB) and supplemental security income (SSI) on October 12, 2011. She alleged disability beginning on April 19, 2009. Her claims were denied initially, upon reconsideration, and following hearing before an Administrative Law Judge in a decision dated December 6, 2013. Jennifer filed a civil action seeking review of that December 2013 decision in this Court on October 7, 2014. The undersigned

---

[1] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears at (Doc. 5, 6) on the docket.

remanded the case on November 20, 2015. The Appeals Council (AC) thereafter remanded the case, a second hearing was held before the same Administrative Law Judge, and she issued another unfavorable decision on August 19, 2016. The AC again remanded the case for a third hearing which was held on February 23, 2018 before a different Administrative Law Judge, the Honorable David W. Thompson (ALJ). At that hearing, Jennifer, Medical Expert (ME) Nathan Strahl, M.D., and a vocational expert (VE) testified, and Jennifer was represented by an attorney. The ALJ denied Jennifer's DIB and SSI claims on April 12, 2018. Jennifer's request for review by the AC was denied on January 11, 2019, making the ALJ's April 2018 Decision the final decision of the Commissioner. Jennifer filed the instant civil action seeking review of the ALJ's Decision on March 11, 2019.

## II

In her November 2011 Disability Report, Jennifer claimed the following conditions limited her ability to work: attention deficit disorder; bipolar disorder; "thiatric [sic]" nerve problems; post-traumatic stress disorder (PTSD); obsessive compulsive disorder; and sleep apnea. AR 240. The ALJ initially questioned Jennifer at the third hearing on February 23, 2018, about the part-time "janitorial" job she was then doing. Jennifer's attorney questioned her about the custody of Jennifer's daughter. She previously lost a custody battle and continued not to have custody of her daughter. Though Jennifer petitioned for visitation rights in 2017, she did not have any structured visitation. She last saw her daughter in November 2017. She thought about her daughter's custody situation every day: "I think about it daily. She's all I care about[.]" AR 1133.

The ALJ next questioned ME Dr. Strahl, who was board certified in psychiatry, about Jennifer's alcohol use. Dr. Strahl confirmed he had an opportunity to review the records in this case and listened to Jennifer's testimony. The only clarification he requested before proceeding with his testimony was

whether Jennifer was currently using alcohol at any level whatsoever. Jennifer answered, "It was actually May of 2015 was the last time I drank. I don't drink anymore except for coffee or what not[.]" AR 1093. She said she was sober and took her prescriptions. Dr. Strahl testified there was sufficient objective medical and diagnostic evidence to establish the presence of medically determinable mental impairments. He listed the following diagnoses: bipolar disorder; anxiety disorder; alcohol dependence; generalized anxiety disorder; PTSD; panic disorder without agoraphobia; bipolar disorder changed to major depressive disorder; borderline personality disorder; and attention deficit hyperactivity disorder (ADHD). He added:

> [Jennifer has] been treated by so many different doctors under so many different circumstances that she received a wide number of diagnoses at one time that may not be replicated at another time. The ones that I think are valid, that is there is consistency and persistence, are the mood disorder, [Listing] 12.04 [Depressive, bipolar and related disorders], which I think is more of a major depressive disorder. Secondarily, at [Listing] 12.02 [Neurocognitive disorders], [ADHD] . . . I believe the anxiety disorders and panic disorders are also reflective of that time period. And really can be raft into the 12.04. I think the PTSD is problematic in the sense that there is a history of abuse at a very young age. And there are at times, under periods of stress, recollections of that abuse and nightmares and so forth. And I would call that not a high level impact, but it's certainly at least a moderate level impact at [Listing] 12.15 [Trauma – and stressor-related disorders] . . . . And then there is diagnosis of alcohol abuse/dependence that is active up till May of 2015.

AR 1096-97. Dr. Strahl elaborated upon Jennifer's alcohol abuse, stating that there was time prior to May 2015 when she was sober and that she relapsed, but after May 2015, she was without substance use disorder.

Dr. Strahl noted that the doctors who provided opinions in the case were "all over the board" as some indicated Jennifer was not capable of working at all

3

and others indicated she had only mild deficits. He stated he had access to the "entire medical record" and felt he had "a good handle." AR 1099. He described the record as "variable" based upon Jennifer's history of drinking and based upon her history of stress. AR 1099. Dr. Strahl stated the highest level stress anybody could endure would be the things Jennifer experienced – the loss of her husband by suicide and losing her child and having to fight for the child.

Dr. Strahl explained that he looked at Jennifer's alcohol use "only as it's impacting after I give you [the ALJ] the B criteria."[2] He stated that the influence of alcohol "would be a significant factor . . . That is, it would worsen several of the B criteria. It would decrease the level of functioning. It would have a major impact on clinical depression." AR 1103. As for Jennifer's concentration, persistence, or pace, Dr. Strahl testified to marked limitation with substances and moderate limitation without substances. He testified to marked limitation in Jennifer's ability to adapt or manage herself when she drank and moderate limitation when she did not drink. Thus, Dr. Strahl eventually testified that the combination of Jennifer's impairments before May 2015 (while she abused alcohol) equaled Listing 12.04: "That is neither one alone is sufficient, but when added together and with alcohol, they would equal 12.04[.]" AR 1110. He stated again that in his opinion, Jennifer's impairments presented medical findings that were at least equal in severity and duration to Listing 12.04:

> Yes, your honor, 12.04 before May of 2015 but not after. And that's evidenced by the B criteria that I gave where there were two marked before May of 2015 and two mild and two moderate after May of 2015. So we don't have the requisite two marked or one extreme.

---

[2] The mental disorder Listings identified by Dr. Strahl and the ALJ have three paragraphs designated A, B, and C. 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant's mental disorder must satisfy the requirements of both paragraphs A and B or the requirements of both A and C. *Id*. To satisfy the "paragraph B" criteria, the claimant's mental impairment must result in an "extreme" limitation in one or "marked" limitation in two of the following four areas of mental functioning: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. *Id*.

4

AR 1110-11.

Lastly, the VE was questioned.

### III

In his Decision, at Step Two, the ALJ found Jennifer had the following severe combination of impairments: affective/mood disorder; ADHD; post-traumatic stress disorder (PTSD); alcohol abuse (prior to May 2015); a history of left carpal tunnel syndrome; and some degenerative disc disease. AR 998. At Step Three, the ALJ determined that from April 19, 2009 through April 30, 2015, Jennifer's impairments, including the substance use disorder, medically equaled section 12.04 of 20 CFR Part 404, Subpart P, Appendix 1. The ALJ highlighted Dr. Strahl's testimony that prior to May 1, 2015, Jennifer had moderate limitation in understanding, remembering, or applying information; mild limitation in interacting with others; marked limitation in concentrating, persisting, or maintaining pace; and marked limitation in adapting or managing herself. The ALJ explained, "The undersigned gives strong weight to Dr. Strahl's opinion, as he is a medical expert who reviewed the entire record and listened to the claimant's testimony at hearing." AR 999. The ALJ proceeded to cite record evidence of Jennifer's alcohol abuse dated between August 2009 and July 2013 and Dr. Strahl's testimony that Jennifer's periods of sobriety prior to May 2015 did not persist. The ALJ concluded, "In conjunction with alcohol abuse, the claimant's combination of mental impairments rendered her unable to work due to persisting and significant deficits in concentration, persistence, pace, and self-adaption and self-management." AR 999.

The ALJ also determined that if Jennifer stopped the substance use, she would continue to have a severe impairment or combination of impairments. However, if Jennifer stopped the substance use, she would not have an

impairment or combination of impairments that met or medically equaled any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1, specifically Listings 12.04, 12.06, or 12.15. The ALJ referred to his discussion of the "paragraph B" criteria later in his Decision in support of his findings that if Jennifer stopped the alcohol abuse, she would have mild limitation in understanding, remembering, or applying information; mild limitation in interacting with others; moderate limitation in concentrating, persisting, or maintaining pace; and moderate limitation in adapting or managing herself. At Step Three, however, the ALJ summarily explained that, "Because the claimant's mental impairments would not cause at least one extreme limitation or two marked limitations, the "paragraph B" criteria would not be satisfied if the claimant stopped the substance use." AR 1000.

> The ALJ made the following residual functional capacity (RFC) finding:
>
> **If the claimant stopped the substance use prior to May 1, 2015, and for the period since May 1, 2015, the claimant would have the [RFC] to perform light work as defined in 20 CFR 404.1564(b) and 416.967(b)** . . . Because of all the individual's mental impairments and symptoms combined, the individual may, during times of symptoms exacerbation have moderate limitations in (1) concentration, persistence and/or pace when attempting certain detailed tasks, **so the individual is limited to jobs that only require up to detailed but uninvolved tasks with few concrete variables, little in the way of change in job process from day to day, jobs that can be learned in 30 days or fewer, and jobs with multistep, self-evident tasks, easily resumed after momentary distraction, and (2) social functioning, so the individual is limited to jobs that do not require more than occasional work-related interaction with the public, no more than frequent work-related interaction with co-workers.**

AR 1001 (emphasis in original).[3]  He stated he considered the period prior to May 1, 2015 with regard to Jennifer's condition "independent of alcohol abuse" and the period since May 1, 2015 "when there is no evidence of continuing alcohol abuse, as noted in the medical evidence of record as reviewed by medical expert Dr. Strahl."  AR 1003.  The ALJ continued, "The analysis below gave strong weight to the opinions of Dr. Strahl, a board-certified psychiatrist [ ] who reviewed the entire record and listened to the claimant's testimony at hearing."  *Id.*  The ALJ considered, among other medical evidence, Jennifer's treating psychiatrist, John Ciaccio, M.D.'s treatment records since 2014.  The record included his treatment notes dated through December 2017.

## IV

Jennifer argues:  the ALJ erred by finding substance use material to a finding that she is *per se* disabled under Medical Listing 12.04; the ALJ failed to properly weigh the medical evidence when determining Jennifer's mental RFC absent substance use; and the ALJ failed to properly evaluate Jennifer's testimony.

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence.  *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989).  Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision."  *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002).  The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied.  *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986).

---

[3] The ALJ explained "only the portion of this paragraph in **bold** type constitutes the [RFC].  The remainder of this paragraph is introductory only."  AR 1001.

Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 404.1566; § 20 C.F.R. 416.966.[4] The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 404.1520. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

2) suffers from an impairment that is severe and meets a durational requirement, or suffers from a combination of impairments that is severe and meets the durational requirement;

---

[4] The standards for establishing a disability in order to receive DIB and SSI are materially the same. *Compare* 20 C.F.R. § 404.1501 *et seq.* (DIB) *with* 20 C.F.R. § 416.901 *et seq.* (SSI). Thus, the Court may at times only cite to the DIB regulations.

> 3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;
>
> 4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and
>
> 5) is unable to perform any other work existing in significant numbers in the national economy.

*Id*. An affirmative answer at steps 3 or 5 leads to a finding that the plaintiff is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. *Id*. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

In the instant case, Jennifer claims error on the ALJ's part at Steps Three and Four.

### A

Jennifer first argues that ME Dr. Strahl's testimony that Jennifer is *per se* disabled under Listing 12.04 when she is using alcohol but not when she abstains from such use lacks the support of substantial evidence. The Commissioner argues under the procedures in SSR 13-2p, the ALJ properly considered the evidence relating to Jennifer when she did use alcohol and when she did not.

42 U.S.C. §§ 423(d)(2)(C) and 1382c(a)(3)(J) provide: "An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." Per Social Security Ruling 13-2p, the "key factor" examined to determine whether drug

9

addiction and alcoholism (DAA) is a contributing factor material to a determination of disability is "whether we would still find the claimant disabled if he or she stopped using drugs or alcohol." SSR 13-2p, at *4 (governing the evaluation of cases involving drug addiction and alcohol); *see also* 20 C.F.R. § 404.1535(b); 20 C.F.R. § 416.935(b) (summarizing the process to be followed when there is medical evidence of a claimant's drug addiction or alcoholism); *Kangail v. Barnhart*, 454 F.3d 627, 628 (7th Cir. 2006) (explaining that pursuant to Section 404.1535(b)(1), "the issue for the administrative law judge is whether, were the applicant not a substance abuser, she would still be disabled").

The Court finds the ALJ committed reversible error at Step Three where he did not support his materiality determination with substantial evidence. In his Decision, the ALJ explained he gave "strong weight" to Dr. Strahl's opinion that Jennifer's mental impairments medically equaled Listing 12.04 during the time she consumed alcohol (April 2009 to April 2015). The ALJ additionally cited record evidence of Jennifer's "significant alcohol abuse throughout" that six-year period of time. AR 999. The ALJ commented, "Dr. Strahl's review of the record indicated that these periods of sobriety [between April 2009 and April 2015] did not persist for the time prior to May 1, 2015." *Id*. Dr. Strahl testified, "May of 2015 [was] the last time that she drank. That's the critical point in time where the alcohol went from a highly contributing factor to a minimally contributing factor because she stopped drinking." AR 1105.

However, as Jennifer correctly points out, ME Dr. Strahl could not provide any citations to specific evidence in the record that her functioning improved from May 1, 2015 onward, when she was not using alcohol and compliant with medication. Dr. Strahl testified that his conclusion as to the materiality of Jennifer's DAA was "really not even my medical opinion. It's right within the medical documentation you see in the record." AR 1111. When pressed by

Jennifer's counsel for specific citations to the record in support of Dr. Strahl's opinion that Jennifer improved after May 2015, specifically citation to where the record showed her concentration improved or had changed for the better after that date, Dr. Strahl pointed out at that very hearing Jennifer "was able to get us exactly the last time that she drank." AR 1115. He compared her ability to do so to a record wherein she could not remember the last time that she drank. Dr. Strahl elaborated:

> A lot of what I'm giving you, I indicated to the court at the very beginning that as my medical opinion based on the overall medical record. And what I'm seeing in the record in terms of measure of improvement, the impact of alcohol or the impact of compliance with medication – there is not anywhere that I could point out that says after this date, concentration is improved compared to the date of a different date. It's not looked at like that in the medical record – it's a transitional attribute that flows along. And there's clearly evidence as I see it, of improvement from not drinking to drinking . . . But I think that that's how I see the case.

AR 1115-16. Jennifer's attorney again pressed Dr. Strahl to provide specific citations to the record – treatment notes – that showed periods of time after May 2015 when there was improvement in the "paragraph B" criteria. Dr. Strahl answered with citation to "mental RFCs" that post-dated May 2015 but otherwise cited treatment records that *pre*-dated May 2015. Dr. Strahl commented, "So I really don't see any mental health documents. This is to visit in, past 2015[.]" AR 1122. Jennifer's attorney and Dr. Strahl had the following colloquy:

> Q. All right, so –
> A.  -- everything is mental residual functional statements.
> Q.  -- so in a nutshell, you don't see any improvement in the record after –
> A.  -- well, because there is no –
> Q. --5/2015.
> A.  -- record. That states yay or nay, there's no records that states yay or nay because there's no medical documentation of any –

11

> Q. Thank you.
> A. -- visits with her doctor.

*Id*. at 1122-23. At best, it is ambiguous whether Dr. Strahl actually had to review Jennifer's treatment records that post-dated May 2015. Such ambiguity does not satisfy even the substantial evidence standard. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (explaining that "substantial evidence" in the Social Security context is "only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). A reasonable mind would not accept as adequate to support Dr. Strahl's strongly asserted opinion his vague references to the record after May 2015 and statements that there was no medical documentation of visits with Jennifer's doctor to review (when, in fact, there was – psychiatrist Dr. Ciaccio's treatment records dated through December 2017). In turn, a reasonable mind would not accept as adequate to support the ALJ's materiality finding at Step Three Dr. Strahl's testimony. Given the ALJ's explicit statements in the Decision, it is obvious that his conclusions as to DAA materiality were based mainly, if not entirely, upon Dr. Strahl's testimony. Moreover, it is clear the ALJ continued to give "strong" weight to Dr. Strahl's opinion in his later consideration of the evidence for purposes of crafting an RFC. Accordingly, this case must be remanded given the shortcomings in Dr. Strahl's testimony as discussed *supra*.

The Commissioner attempts to convince the Court there is no reversible error here because the ALJ later in his Decision properly considered the evidence of record in formulating the mental RFC. But as ALJs in Social Security decisions (and in this case) explain repeatedly, "The limitations identified in the paragraph B criteria [for a mental impairment listing] are not a [RFC] assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential process," whereas the mental RFC assessment used as steps 4 and 5 of the sequential evaluation process "requires a more detailed assessment[.]" AR 1001.

It was at Step Three that the ALJ determined the issue of DAA materiality. Therefore, the Court need not consider the remaining steps of the sequential evaluation because the ALJ committed reversible error at that step.

### B

Because the ALJ's Step Three DAA materiality finding was ultimately outcome determinative, the Court will not proceed to consider the remaining arguments as to the ALJ's RFC finding. This case must be remanded so, at the very least, the ALJ can elicit testimony from a ME who has unquestionably been provided with and considered the *entire* record and whose testimony reflects that.

### V

For the reasons set forth above, it is recommended that: 1) the Plaintiff's Motion for Summary Judgment (Doc. 10) be granted; 2) the Defendant's Motion for Summary Affirmance (Doc. 12) be denied; and 3) this case be remanded to the Commissioner of Social Security for further proceedings consistent with this Opinion Pursuant to 42 U.S.C. §405(g), Sentence Four.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended*.

Entered on July 20, 2020.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE